UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>   v.<br><br>ANTONIO DIEGO BRUGNOLI-BASKIN,<br><br>                 Defendant. | CASE NO. 2:22-mj-00499-MAT-LK<br><br>ORDER GRANTING GOVERNMENT'S APPEAL OF RELEASE ORDER |

      This matter comes before the Court on the Government's motion to appeal Magistrate Judge Michelle L. Peterson's order releasing Defendant Antonio Diego Brugnoli-Baskin[1] on bond with special conditions. Dkt. Nos. 19, 27. The Court initially granted the Government's emergency motion to stay the release order pending the Court's resolution of its impending motion to appeal, but then granted Mr. Baskin's emergency motion to reconsider. Dkt. No. 24; Dkt. No. 25 at 1–2 (noting that the special conditions Judge Peterson imposed were "appropriately tailored to avoid risk to the community while the Court considers the Government's appeal").[2]

---

[1] Because the Defendant prefers to be called "Mr. Baskin," Dkt. No. 28 at 1 n.1, this Order refers to him by that name.
[2] The Court appreciates the exigent circumstances under which the emergency motion was filed. *See* Dkt. No. 27 at 4

ORDER GRANTING GOVERNMENT'S APPEAL OF RELEASE ORDER - 1

The Government argues that this Court should rescind Judge Peterson's release order and order Mr. Baskin detained pending trial because he "cannot be safely supervised in the community," rendering release "too great a risk" with no set of conditions that could reasonably assure community safety and future appearance. Dkt. No. 27 at 2, 9–10. Having considered the record before Judge Peterson, the audio recording of the detention hearing, the parties' filings, and the balance of the record, the Court agrees. Therefore, the Court grants the Government's motion, Dkt. No. 27, and orders that Mr. Baskin be taken into custody and detained pending trial.

## I. BACKGROUND

Mr. Baskin is charged with Production of Child Pornography, 18 U.S.C. § 2251(a), (e), and Possession of Child Pornography, *id.* § 2252(a)(4)(B), (b)(2). Dkt. No. 9 at 1–2. According to the Government's Complaint for Violation, from February 16, 2021 to February 18, 2021, the National Center for Missing and Exploited Children received 12 CyberTip reports from Google that reported that Mr. Baskin had uploaded approximately 129 depictions of child sexual abuse. *Id.* at 3–4. Based on these CyberTips, the Seattle Police Department ("SPD") opened a case in March 2021. *Id.* at 4. Detective Christine Nichols reviewed the CyberTips and determined that the files provided by Google met the definition of child pornography under Washington law. *Id.* Detective Nichols served search warrants on Google and Comcast, which led to data indicating that the residential address for the internet account belonged to Mr. Baskin, was paid for by his mother, and that Mr. Baskin was the user of the internet account. *Id.*; Dkt. No. 28 at 5.

On September 8, 2022, a King County Superior Court judge authorized a search warrant for Mr. Baskin and his residence. Dkt. No. 9 at 4. The same day, Mr. Baskin was located by the

---

n.1. The Government is correct that the special conditions that Magistrate Judge Peterson imposed were in the docket by the time the Court entered its Order granting the stay. *Id.*; *see also* Dkt. No. 21. The Court had inadvertently overlooked docket entry 21, and apologizes to the parties for that oversight.

ORDER GRANTING GOVERNMENT'S APPEAL OF RELEASE ORDER - 2

SPD and taken into custody. *Id.* His personal cell phone and a second phone belonging to him were seized during the search. *Id.* A search of his phones revealed additional child sexual abuse imagery, including images of child sexual exploitation that the Government alleges were produced by Mr. Baskin himself. *Id.* at 5–6. The images allegedly produced by Mr. Baskin involve three female children approximately five to eight years old, including a child whom Mr. Baskin watched in his capacity as a babysitter. *Id.* One image of this child shows her utilizing a portable toilet that appears to be located in Mr. Baskin's vehicle. *Id*. The digital timestamp on a second explicit photo of the child indicates that it was taken on September 7, 2022 at the "Woodland Park Zoo." *Id.*

On October 8, 2022, Mr. Baskin was arrested. *Id.* Two days later, he was charged in King County Superior Court with Sexual Exploitation of a Minor, Dealing in Depictions of a Minor Engaged in Sexually Explicit Conduct in the First Degree, and Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct in the First Degree. *Id.*; Dkt. No. 27 at 3. On the same day, the King County court imposed bail of $250,000 with conditions of no contact with minor children without exception, no criminal law violations, and no use or possession of devices capable of accessing the internet absent installation of monitoring software. Dkt. No. 27 at 3–4. Mr. Baskin posted the bond and was released the following day. *Id.* at 4.

On October 18, 2022, the Government filed a federal criminal complaint, and Mr. Baskin was arrested on October 20, 2022. Dkt. No. 15. This arrest occurred before his arraignment in the state court matter, which was subsequently dismissed. Dkt. No. 27 at 4. On October 24, 2022, a detention hearing was held before Judge Peterson. Dkt. No. 19. Judge Peterson ordered that Mr. Baskin be released on bond under supervision by Pretrial Services and with special conditions. *Id.* Judge Peterson found that, although Mr. Baskin posed a danger to the community, the recommended special conditions were sufficient to mitigate the risk. Audio Recording of Hearing, Dkt. No. 19, at 20:26–21:15. The Government requested a stay of the release order pending its

decision regarding whether to appeal the order, but Judge Peterson denied that request. Dkt. No. 19. Although the Government filed an emergency motion to stay Mr. Baskin's release pending resolution of its intended appeal of the release order, Dkt. No. 20, the Court ultimately declined to order a stay of the release, Dkt. No. 25, and therefore Mr. Baskin is not presently in custody.

## II.   DISCUSSION

**A.   Legal Standard for a Motion to Review a Release Order**

A party is permitted to seek review of a magistrate judge's release order under 18 U.S.C. § 3145(a), which provides that "[i]f a person is ordered released by a magistrate judge . . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." In deciding such motion, the district court reviews the magistrate judge's order de novo. *See, e.g.*, *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

Pursuant to the statute, the Court applies the same standard and factors as the magistrate judge. The Court "shall order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court determines that release on personal recognizance "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the Court "shall order" release on conditions; specifically, "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B). If, however, "no condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any other person and the community," the judicial officer "shall" order the defendant detained. 18 U.S.C. § 3142(e)(1).

Pretrial detention should only be granted "in rare circumstances . . . and any doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). However, the Bail Reform Act expressly provides that where the judicial officer finds that there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § 2251(a), (e), *id.* § 2255, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," subject to rebuttal by the defendant. 18 U.S.C. § 3142(e)(3)(E). In order to rebut the presumption against pretrial release, the defendant "must produce evidence that he does not pose a danger to the community or a risk of flight." *United States v. Valenzuela*, No. 12-cr-062-RSL, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012). The defendant's burden is one of production, not persuasion, and once that burden is met, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (cleaned up). In addition, once the defendant has met his burden of production, the Government bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and that a defendant poses a flight risk by a preponderance of the evidence. *Gebro*, 948 F.2d at 1121.

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must consider (1) the nature and seriousness of the offenses charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, including but not limited to his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, record concerning appearance at court hearings,

and criminal history, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the least important of these factors, and the Court may not engage in a pretrial determination of guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

**B.    Presumption Against Mr. Baskin's Release**

Mr. Baskin is charged with Production of Child Pornography, 18 U.S.C. § 2251(a), (e), and Possession of Child Pornography, *id.* § 2252(a)(4)(B), (b)(2). Dkt. No. 9 at 1–2. In determining whether there is probable cause to believe Mr. Baskin committed the alleged crimes, the Court must determine whether there "is a reasonable ground for belief of [his] guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id.* To determine whether there is probable cause to believe Mr. Baskin committed the crimes, the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (2003)). The Court has recounted the events leading up to Mr. Baskin's arrest above, and finds based on these events and the facts laid out in the Complaint, Dkt. No. 9, that an objectively reasonable police officer would view these facts as amounting to probable cause. Specifically, the data produced by Google and Comcast identify Baskin as the user of the internet account that uploaded 129 depictions of child pornography. *Id.* at 4. And the searches of Mr. Baskin's phones revealed sexually explicit photos he had taken of children, including photos of a child he babysat taken in or near Mr. Baskin's car. Dkt. No. 9 at 5–6. Because there is probable cause to believe that Mr. Baskin committed an offense

1 involving a minor victim under 18 U.S.C. § 2251, a rebuttable presumption arises against his
2 release. *See* 18 U.S.C. § 3142(e)(3)(E); *see also* Dkt. No. 9 at 7 (finding probable cause on October
3 18, 2022).

4   To rebut the presumption, Mr. Baskin has submitted evidence that he has support from his
5 parents and ties to the community, no prior criminal record, and a record of compliance with the
6 conditions imposed by Pretrial Services. *See* Dkt. No. 28 at 5–7. Because Mr. Baskin has produced
7 at least some "evidence that he does not pose a danger to the community or a risk of flight,"
8 *Valenzuela*, 2012 WL 1377087, at *2, he has satisfied his burden of production and the Court
9 proceeds to consider whether the four factors in 18 U.S.C. § 3142(g) weigh for or against release.

**C.   The Statutory Factors Weigh Against Releasing Mr. Brugnoli-Baskin Pending Trial**

For the reasons discussed below, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community.

   1.   <u>Nature and Seriousness of the Offenses Charged</u>

The Bail Reform Act specifically directs courts to consider whether the offense is a crime of violence and whether it involves a minor victim when evaluating the nature and seriousness of the offense charged. 18 U.S.C. § 3142(g)(1). Here, the charged offenses are crimes of violence as well as crimes involving a minor victim. 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" as "any felony under chapter . . . 110," which includes 18 U.S.C. §§ 2251, 2252). And because the charged offenses "entail the sexual exploitation of children," they are among "the gravest and most serious crimes that a defendant can be charged with." *United States v. Petersen*, No. 17-CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017). In keeping with their gravity, both of the charged offenses carry severe penalties: Count I, Production of Child Pornography, carries a sentence of 15 to 30 years, 18 U.S.C. § 2251(e), and Count II, Possession of Child Pornography,

carries a sentence of up to 10 years, *id.* § 2252(b)(2). The Court finds that this factor weighs heavily in favor of detention.

2. Weight of the Evidence

While the weight of the evidence is the least important factor, *see Motamedi*, 767 F.2d at 1408, it too weighs against releasing Mr. Baskin pending trial. The images described in the complaint were found on cell phones that were solely in Mr. Baskin's control, and it appears that those images quite clearly depict child sexual abuse, including of at least one child who was known to be in Mr. Baskin's care while he worked as a babysitter. Dkt. No. 9 at 4–6. The evidence also connects the images to Mr. Baskin's personal vehicle. *Id.* at 5–6. There is considerable evidence that Mr. Baskin committed the crimes he is charged with, so the Court finds that this factor weighs in favor of detention.

3. The History and Characteristics of the Defendant

The third factor requires the Court to consider the "history and characteristics" of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and whether, at the time of the arrest, "the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]" 18 U.S.C. § 3142(g)(3). In evaluating this factor, the Court considers the facts described in the Pretrial Services Report and Supplemental Pretrial Report, Dkt. Nos. 6, 18, as well as the testimony and argument at the detention hearing. Audio Recording of Hearing, Dkt. No. 19.

Mr. Baskin's history and characteristics present a mixed picture, but ultimately weigh against detention. Mr. Baskin did not have a criminal record before the conduct that led to his

arrest in October 2022. He appears to have established ties to the community based on his residence in Washington for nearly his whole life, and based on the presence in Washington of his mother, father, aunt, and grandfather. Mr. Baskin's passport has been surrendered to the Court, and he does not have any meaningful contacts outside of the state. Dkt. No. 23; Dkt. No. 28 at 7. Although his parents divorced when he was young, his parents have remained active in his life. Dkt. No. 28 at 6. He was evicted from his home and lost his job when the police first searched his home, but his parents have helped him find new housing and a job since then. *Id.* Mr. Baskin now lives by himself in an "apodment," or a 200 square-foot studio apartment with a shared kitchen. *Id.* Before his arrest he had been employed more often than not and had recently obtained new employment in Seattle, although he had hardly begun the job at the time of his arrest. *Id.* at 7. He is supported by his mother, who is committed to paying his rent. *Id.* at 6. Although he is expected to contribute to paying that rent, he has not been able to do so yet. Since his release, he has met with Pretrial Services as required, and his father has attended one of the meetings to review the special conditions, as well as helping remove Internet-capable devices from his home. *Id.* at 7.

Despite the fact that Mr. Baskin enjoys some degree of support from his parents, he lives alone because neither of his parents is willing to have him in their homes due to a history of irrational behavior and verbal abuse. Although Mr. Baskin was sent by his mother to counseling for years to address his yelling and irrational behavior, and that counseling helped with his anger management issues, he has not attended such counseling since turning 18. However, a mental health evaluation and follow-up treatment is a required condition of Mr. Baskin's release. Dkt. No. 21 at 2.

On balance, the Court finds that Mr. Baskin's history and characteristics weigh in favor of release.

        4.        <u>Danger to Any Person or the Community</u>

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by Mr. Baskin's release. 18 U.S.C. § 3142(g)(4); *see id.* § 3142(f)(2)(B) (the rules concerning admissibility of evidence in criminal trials do not apply to a pretrial detention hearing); *Gebro*, 948 F.2d at 1121 (dangerousness must be demonstrated by clear and convincing evidence). Here, as with the prior factor, the Court considers the facts described in the Pretrial Services Report and Supplemental Pretrial Report from Pretrial Services, Dkt. Nos. 6, 18, as well as the testimony and argument at the detention hearing. Audio Recording of Hearing, Dkt. No. 19.

The evidence suggests that Mr. Baskin used his position of trust and authority with children to sexually exploit minor victims, and did so without detection until Google CyberTips led to his identification and arrest. Dkt. No. 9 at 3–5. The evidence also suggests that Mr. Baskin possessed at least 129 separate depictions of child pornography. *Id.* at 4. Mr. Baskin has advertised himself as having a strong childcare resume on Care.com, and has actively sought work as a babysitter and nanny on the Internet and in the community. Dkt. No. 27 at 7. He has also worked as a ski instructor with numerous children between the ages of 7 and 10. *Id.* This history of conduct shows that Mr. Baskin posed a very real danger to the community before his arrest by repeatedly seeking out positions of trust and authority with children, and then abusing that position with at least one child to sexually exploit her. Given Mr. Baskin's demonstrated sexualized interest in minors, the Court concludes that the danger continues as long as Mr. Baskin is released into the community. The crimes charged against Mr. Baskin are not only crimes of violence, *see* 18 U.S.C. § 3156(a)(4)(C), but also crimes against minor victims—victims who are especially vulnerable and unable to defend themselves. This heightens the danger posed to the community.

ORDER GRANTING GOVERNMENT'S APPEAL OF RELEASE ORDER - 10

Having found that Mr. Baskin poses a danger, the Court must still consider whether there is a "condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e); *see United States v. Hir*, 517 F.3d 1081, 1091–92 (9th Cir. 2008). The Court is unconvinced that the special conditions adequately mitigate the danger posed by Mr. Baskin's potential access to minor children and to electronic devices, or that any set of conditions could do so.

Although Mr. Baskin is subject to location monitoring based on Active Global Positioning Satellite technology, Dkt. No. 21 at 2, location monitoring cannot enable Pretrial Services to determine when or whether Mr. Baskin is in proximity to minors. Mr. Baskin's residence in the Ballard neighborhood puts him in proximity to a very large number of places where minors may congregate: West Woodland Elementary, Ballard High School and Ballard Pool, Ballard Boys and Girls Club, Salmon Bay K-8 School, Adams Elementary School, Salmon Bay Park and playground, Matheia School, Ballard Playground and Community Center, Gilman Playground, and St. Alphonsus Church and School. This non-exhaustive list of locations are all within a one-mile radius of his apartment, and the closest is 1,760 feet away. The Court notes that there are also numerous locations where minors congregate near Mr. Baskin's work, including a playground roughly 600 feet away and the Woodland Park Zoo—a site where Mr. Baskin took sexually explicit photos of a minor child he babysat. Although Mr. Baskin has been placed on home detention, he is not prohibited from leaving his apartment, and may leave for any number of reasons, including employment, religious services, medical appointments, legal reasons, or as otherwise approved by Pretrial Services. Dkt. No. 21 at 2. Mr. Baskin will also be living alone at his apartment, given that neither of his parents are willing to have him in their homes. Although the defense offers that his parents are willing to be third-party custodians and check on him daily, Dkt. No. 28 at 3, their ability to supervise him under those circumstances is still quite limited. And though the conditions

ORDER GRANTING GOVERNMENT'S APPEAL OF RELEASE ORDER - 11

bar him from possessing computers or accessing the internet, Pretrial Services will have limited ability to ensure compliance with that condition ex ante. As the Ninth Circuit discussed in *United States v. Hir*, 517 F.3d at 1092–93, it is extremely difficult to control a defendant's access to computers or the internet: internet-capable devices are ubiquitous in our society. *See also United States v. Aiad-Toss*, No. 4:19-CR-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020) (although location monitoring "may offer useful information about where [the defendant] is, it would provide little useful information about what he is doing," and "[t]he ready accessibility of smart phones and digital communication devices would make it all too easy for him to commit the same types of crime(s) that he is accused of committing with other young, vulnerable girls."). Even with stringent conditions such as electronic home monitoring, it would not be possible to control the defendant's access to the internet when electronic devices can be found easily. Mr. Baskin also agreed to a search condition, Dkt. No. 21 at 1, but Pretrial Services will still have to develop reasonable suspicion of contraband or evidence of a violation of a condition of supervision.

Even assuming the risk of danger were low, the harm that would result from further victimization of children is immense, given the lifelong trauma that victims of child sexual abuse often suffer. *See* Dkt. No. 27 at 10 (quoting Bessel Van Der Kolk, M.D., *The Body Keeps the Score* 66-67 (Penguin Books 2015)). Given Mr. Baskin's predatory behavior and the potential harms at stake, the Court cannot accept a release plan that depends on good faith compliance. *See Hir*, 517 F.3d at 1092–93 (describing dependence on a defendant's "good faith compliance" as a "critical flaw" where the defendant engaged in criminal acts despite knowing the "seriousness of his offenses and the gravity of their consequences").

Considering all of the above, the Court finds that the Government has met its burden to show by clear and convincing evidence that Mr. Baskin is a danger to the community, and that no condition or combination of conditions will reasonably assure the safety of others and the

community if he is released. *See United States v. Yoeun*, CR19-5148-BHS, Dkt. No. 11 at 6 (W.D. Wash. Mar. 13, 2019) ("Even with stringent conditions such as electronic home monitoring, it would not be possible to control the defendant's access to the internet[.]"); *United States v. Santiago-Muniz*, No. 3:17-CR-326, 2017 WL 6028347, at *3 (M.D. Pa. Dec. 5, 2017) ("Preventing th[e] type of highly predatory and addictive sexual behavior which may be completed in relative secrecy with any number of devices that can connect to the internet is simply beyond the capacity of pretrial services to effectively monitor."); *United States v. Petersen*, No. 17-CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (where defendant's "modus operandi was to induce trust and betray it" with children he babysat, his "commitment to that tactic, and his success with it, raise insurmountable concerns that he cannot be trusted to adhere to conditions restricting his behavior."). Therefore, the Court grants the Government's motion and orders that Mr. Baskin be taken into custody and detained pending trial.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion, Dkt. No. 27, and ORDERS that Mr. Baskin be taken into custody and detained pending trial.

Dated this 2nd day of November, 2022.

*Lauren King*
Lauren King
United States District Judge